UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JAMES WOOD,

                Plaintiff,

v.                                       6:15-CV-1030
                                       (GTS/WBC)

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

_____

APPEARANCES:                               OF COUNSEL:

OFFICE OF PETER W. ANTONOWICZ        PETER W. ANTONOWICZ, ESQ.
  Counsel for Plaintiff
148 West Dominick St.
Rome, NY 13440

U.S. SOCIAL SECURITY ADMIN.           JASON P. PECK, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

William B. Mitchell Carter, U.S. Magistrate Judge,

## <u>REPORT and RECOMMENDATION</u>

      This matter was referred for report and recommendation by the Honorable Judge

Suddaby, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local

Rule 72.3(d). (Dkt. No. 15.) This case has proceeded in accordance with General

Order 18.

      Currently before the Court, in this Social Security action filed by James Wood

("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the

Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-

motions for judgment on the pleadings. (Dkt. Nos. 13, 14.) For the reasons set forth below, it is recommended that Plaintiff's motion be denied and Defendant's motion be granted.

## I. RELEVANT BACKGROUND

### A. Factual Background

Plaintiff was born on January 2, 1967. (T. 148.) He completed high school. (T. 186.) Generally, Plaintiff's alleged disability consists of depression, anxiety, chronic obstructive pulmonary disease ("COPD"), and heart disease. (T. 185.) His alleged disability onset date is March 29, 2012. (T. 180.) His date last insured is June 30, 2017. (T. 24.) He previously worked as a cook, meat wrapper, and stocker. (T. 207.)

### B. Procedural History

On June 12, 2012, Plaintiff applied for a period of Disability Insurance Benefits ("SSD") under Title II, and Supplemental Security Income ("SSI") under Title XVI, of the Social Security Act. (T. 148.) Plaintiff's applications were initially denied, after which he timely requested a hearing before an Administrative Law Judge ("the ALJ"). On October 21, 2013, Plaintiff appeared before the ALJ, Angela Miranda. (T. 40-71.) On February 28, 2014, ALJ Miranda issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 19-38.) On July 10, 2015, the Appeals Council ("AC") denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 1-6.) Thereafter, Plaintiff timely sought judicial review in this Court.

### C. The ALJ's Decision

Generally, in her decision, the ALJ made the following five findings of fact and conclusions of law. (T. 24-33.) First, the ALJ found that Plaintiff met the insured status

requirements through June 30, 2017 and Plaintiff had not engaged in substantial gainful activity since March 29, 2012. (T. 24.) Second, the ALJ found that Plaintiff had the severe impairments of mental impairments, cardiac dysfunction, breathing dysfunction, and obesity. (T. 24-25.) Third, the ALJ found that Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1. (T. 25-27.) Fourth, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work with additional postural, environmental, and mental limitations. (T. 27.)[1] Specifically, the ALJ determined that Plaintiff had:

> the capacity to occasionally lift and carry 20 pounds and to frequently lift and carry 10 pounds. [Plaintiff] [had] the unlimited capacity to push and pull up to the weight capacity for lifting and carrying. [Plaintiff] [had] the capacity to stand and walk 6-8 hours in an 8-hour workday and [had] the capacity to sit 6-8 hours in an 8-hour workday. [Plaintiff] [had] the capacity to occasionally stoop, kneel, crouch, crawl, and climb stairs and ramps. [Plaintiff] [had] no limitations in the ability to balance or in manipulative abilities. Considering [Plaintiff's] breathing dysfunction, [Plaintiff] should have only occasional exposure to extremes of heat or cold, wetness/humidity, and dust, fumes or other pulmonary irritants. Mentally [Plaintiff] [had] the capacity to understand, remember, and carry our simple, routine tasks. In so doing, [Plaintiff] [had] the capability to utilize common sense understanding to carry out instructions, to deal with several concrete variables in standardized situations, and to sustain this mental ability consistent with the normal demands of a workday including regular breaks and meal periods. [Plaintiff] [had] the capacity to appropriately interact with supervisors and to occasionally interact with coworkers and the general-public. Occasional interaction with coworkers and general public was defined as having the ability to work in vicinity of coworkers and the general-public, but actual interaction for completion of job tasks is limited to one third of the workday. [Plaintiff] [had] the capacity

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time. 20 C.F.R. §§ 404.1567(b), 416.967(b).

to identify and avoid normal work place hazards and to adapt to routine changes in the work place.

(T. 27.) Fifth, the ALJ determined that Plaintiff was capable of performing his past relevant work as a stocker (DOT 299.367-014) as he actually performed it. (T. 31-32.)

## II. THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A. Plaintiff's Arguments

Plaintiff makes two separate arguments in support of his motion for judgment on the pleadings. First, Plaintiff argues the ALJ failed to properly evaluate the opinion evidence in accordance with the treating physician rule under 20 C.F.R. § 404.1597(c)(20) and § 416.927(c)(2). (Dkt. No. 13 at 13-18 [Pl.'s Mem. of Law].) Second, and lastly, Plaintiff argues the Commissioner "disregarded and violated Regulations when employing consultative medical examiners." (*Id.* at 18-20.)

### B. Defendant's Arguments

In response, Defendant makes two arguments. First, Defendant argues substantial evidence supports the ALJ's assignment of "limited weight" to the March 6, 2013 statement from treating physician Toby Davis, Ph.D. (Dkt. No. 14 at 6-12 [Def.'s Mem. of Law].) Second, and lastly, Defendant argues the ALJ properly obtained consultative examinations instead of recontacting Plaintiff's treating sources. (*Id.* at 12-13.)

## III. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the

Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable

deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B.    Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The Supreme Court has recognized the validity of this sequential evaluation process.  *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987).  The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

### IV.    ANALYSIS

### A.    Treating Physician, Toby Davis, Ph.D.

The opinion of a treating source will be given controlling weight if it "is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record."  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015).

The following factors must be considered by the ALJ when deciding how much weight the opinion should receive, even if the treating source is not given controlling weight: "(i) the frequency of examination and the length, nature, and extent of the

treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the opinion is from a specialist." 20 C.F.R. §§ 404.1527(c)(2)(i)-(iv), 416.927(c)(2)(i)-(iv). The ALJ is required to set forth her reasons for the weight she assigns to the treating physician's opinion. *Id.*, *see also* SSR 96-2p, 1996 WL 374188 (July 2, 1996); *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000) (quoting *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir.1998)).

On March 6, 2013, Dr. Davis completed a "Mental Capacity Assessment" form. (T. 677-679.) Dr. Davis opined that in the area of understanding and memory, Plaintiff had "marked" limitations in his ability to: remember locations and work-like procedures, and understand and remember very short and simple instructions. (T. 677.)[2] He opined that Plaintiff had "extreme" limitations in his ability to understand and remember detailed instructions. (*Id.*) Dr. Davis stated that these limitations were based on mental status examinations. (*Id.*)

Dr. Davis provided limitations in the area of sustained concentration and persistence. He opined that Plaintiff had "marked" limitations in his ability to: carry out very short and simple instructions; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; sustain an ordinary routine without special supervision; and make simple work-related decisions. (T. 677-678.) Dr. Davis opined that Plaintiff had "extreme" limitations in his ability to: carry out detailed instructions; maintain attention and concentration for extended periods; work in coordination with or in proximity to others without being distracted by them; complete a

---

[2]     The form completed by Dr. Davis defined "marked" as "there is serious limitations in this area. The individual cannot generally perform satisfactorily in this area." (T. 677.) The form defined "extreme" as "there is major limitations in this area. There is no useful ability to function in this area." (*Id.*)

normal workday without interruptions from psychologically based symptoms; complete a normal workweek without interruptions from psychologically based symptoms; and perform at a consistent pace with a standard number and length of rest periods. (*Id.*) Dr. Davis opined Plaintiff would be absent four or more days per month. (T. 678.) Dr. Davis indicated that he based the limitations on "previous work [history], as mentioned by his former colleague." (*Id.*)

In the area of social interaction, Dr. Davis opined Plaintiff had an "extreme" limitation in his ability to accept instructions and respond appropriately to criticism from supervisors. (T. 678.) He opined that Plaintiff had "marked" limitations in his ability to: interact appropriately with the general public; ask simple questions or request assistance; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness. (*Id.*) Dr. Davis indicated that these limitations were based on "previous work [history] and discussion with others." (*Id.*)

In the area of adaptation, Dr. Davis opined that Plaintiff had "extreme" limitations in his ability to: respond appropriately to changes in the work setting and travel in unfamiliar places or use public transportation. (T. 679.) He opined Plaintiff had a "marked" limitation in his ability to be aware of normal hazards and take appropriate precautions. (*Id.*) Dr. Davis indicated Plaintiff had between a "marked" and "extreme" limitation in his ability to set realistic goals or make plans independently of others. (*Id.*) Dr. Davis indicated that these limitations were based on Vineland-II test results. (*Id.*)

The ALJ afforded Dr. Davis's 2013 statement "limited weight." (T. 31.) The ALJ reasoned that the limitations were not supported by the psychological consultative

examination report and other mental health treatment notations in the record. (*Id.*) The ALJ reasoned that Dr. Davis's limitations were not supported by his treatment notations. (*Id.*) The ALJ also reasoned that the limitations were inconsistent with the Plaintiff's search for employment. (*Id.*)

Plaintiff argues that the ALJ erred in her assessment of Dr. Davis's opinion in formulating her mental RFC determination. (Dkt. No. 13 13-18 [Pl.'s Mem. of Law].) Of note, Plaintiff does not argue that the ALJ erred in formulating her physical RFC determination.

Plaintiff specifically argues that the ALJ failed to identify which mental health treatment notes did not support Dr. Davis's statement and the ALJ ignored supportive treatment notations. (Dkt. No. 13 at 15-16 [Pl.'s Mem. of Law].) Contrary to Plaintiff's argument, the ALJ noted which treatment notations she deemed inconsistent with Dr. Davis's statement and the ALJ thoroughly outlined the medical opinion evidence in the record.

First, the ALJ specifically noted that Dr. Davis's limitations were inconsistent with the "psychological consultative examiner." (T. 31.) On examination, psychiatric consultative examiner Dennis Noia, Ph.D., noted that Plaintiff was appropriately dressed, had good hygiene and grooming, his motor behavior was normal, and his eye contact was appropriate. (T. 604-605.) Dr. Noia also observed that Plaintiff's speech was intelligible; his expressive and receptive language was adequate; and his thought processes were coherent and goal directed with no evidence of delusions, hallucinations, or disordered thinking. (T. 605.) Dr. Noia noted that Plaintiff's mood was calm and he appeared relaxed and comfortable. (*Id.*) He observed that Plaintiff's affect

was congruent, his sensorium was clear, and he was oriented. (*Id.*) Dr. Noia observed that Plaintiff's recent and remote memory skills were intact. (*Id.*) Dr. Noia noted Plaintiff's cognitive functioning was average and his insight and judgment were good. (*Id.*)

Overall, Dr. Noia opined that Plaintiff was capable of: understanding and following simple instructions and directions; performing simple and some complex tasks with supervision and independently; maintaining attention and concentration for tasks; regularly attending to a routine and maintaining a schedule; learning new tasks; making appropriate decisions; relating to and interacting moderately well with others; and he appeared to have some difficulty dealing with stress. (T. 606.)

Although the ALJ afforded Dr. Noia's opinion "limited weight" reasoning it was "vague" and did not fully address Plaintiff's functional abilities, the ALJ's mental RFC determination was supported by Dr. Noia's opinion. (T. 30.) It is well settled that an ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability. *See* 20 C.F.R. §§ 404.1512(b)(6), 404.1513(c), 404.1527(e), 416.912(b)(6), 416.913(c); 416.927(e); *Baszto v. Astrue,* 700 F. Supp. 2d 242, 249 (N.D.N.Y. 2010) ("[A]n ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability.").

Second, the ALJ concluded that Dr. Davis's statements were inconsistent with other mental health treatment notes in the record. (T. 31.) Contrary to Plaintiff's assertion, the ALJ discussed treatment notations from Lewis County Community Mental

Health Center ("Lewis") which indicated Plaintiff had "no obvious evidence of anxiety" and "no flagrantly abnormal mental status findings." (T. 532.) A provider with Lewis noted that Plaintiff lost a job in May of 2012; however, the loss of job appeared to be "more about the employer than the employee" and that Plaintiff continued to look for work. (T. 535.)

Elsewhere in the record, providers noted normal mental status examinations. For example, on May 7, 2013, Plaintiff sought treatment for abdominal pain and the provider noted "mental status appropriate." (T. 687.) On October 11, 2012, January 14, 2013 and April 22, 2013, providers at Faxton-St. Luke's Hospital noted that Plaintiff was alert, cooperative, with a normal mood and affect, and normal attention and concentration. (T. 645, 699, 705.) On April 26, 2013, Plaintiff followed up with Rana Ahmad, M.D. for complaints of chest pains. (T. 275.) At that time, Plaintiff denied anger, anxiety, confusion, decreased concentration, delusions, depression, hallucinations, irritability, memory problems, mood changes, panic attacks, sadness/tearfulness, sleep disturbances, and suicidal thoughts. (T. 277.) The ALJ properly declined to afford Dr. Davis's statement controlling weight because it was inconsistent with substantial evidence in the record, such as mental status examinations, which were normal. *See Priel v. Astrue*, 453 F. App'x 84, 87 (2d Cir. 2011).

Here, the ALJ's decision sufficiently laid out the evidence in the record to support her conclusion that Dr. Davis's limitations were not supported by other mental health notations in the record. Therefore, the ALJ was sufficiently explicit in articulating her rationale. *See Cichocki v. Astrue*, 729 F.3d 172, 178 n.3 (2d Cir. 2013) ("An ALJ need

not recite every piece of evidence that contributed to the decision, so long as the record 'permits us to glean the rationale of an ALJ's decision.").  Further, an ALJ's failure to cite specific evidence does not indicate that it was not considered.  *Barringer v. Comm'r of Social Sec.,* 358 F.Supp.2d 67, 78-79 (N.D.N.Y. 2005).

Plaintiff argues that the ALJ improperly relied on Plaintiff's statements that he was looking for work.  (Dkt. No. 13 at 15-17 [Pl.'s Mem. of Law].)  Plaintiff contends that the ALJ's reliance on these statements "belies ignorance for [Plaintiff's] desperate financial state."  (*Id.* at 17.)  However, the ALJ was correct in stating that Plaintiff was looking for work based on statements made to various providers.  (T. 31, *referring to* T. 535, 681, 683.)  The fact that Plaintiff may have been looking for work due to his dire financial situation did not change the fact that Plaintiff was seeking employment.  *Bell v. Colvin*, 12-CV-1813, 2015 WL 224662, at *8 (N.D.N.Y. Jan. 15, 2015) ("The argument that Plaintiff was required to look for work as part of his Workers' Compensation claim does not change the fact that Plaintiff was seeking employment or was at least holding himself out as doing so, which is all the ALJ stated that Plaintiff was doing.").  Further, the fact that Plaintiff sought employment was but one factor that the ALJ considered in her overall RFC analysis.

Plaintiff also argues that the ALJ erred in relying on Dr. Davis's statement that Plaintiff was making "modest progress."  (Dkt. No. 13 at 17 [Pl.'s Mem. of Law].)  However, the ALJ did not err in relying on Dr. Davis's statement of progress in her overall evaluation of Dr. Davis's limitations.  *Rosier v. Colvin*, 586 F. App'x 756, 758 (2d Cir. 2014) (ALJ properly took into consideration plaintiff's positive response to treatment when assigning less than controlling weight to a treating source's assessment).

In addition, the ALJ reasoned that Dr. Davis's limitations were not supported by his treatment notations. (T. 31.) In support of her determination, the ALJ stated that Dr. Davis had only treated Plaintiff for three months before completing the medical source statement, Dr. Davis later indicated Plaintiff was making "modest progress," and Dr. Davis's treatment notations were summaries of treatment sessions and did not provide functional limitations. (*Id.*) Dr. Davis's notations include reported symptomology and treatment methods; however, Dr. Davis's notations include few objective observations or findings. On January 29, 2013, Dr. Davis did observe that Plaintiff was oriented, his speech was coherent "yet rambling and perseverative," his hygiene was adequate, his eye contact was fair, his affect was flat and congruent with his mood which was dysthymic, and his sensorium was intact. (T. 681.) Dr. Davis's own notations on the 2013 statement indicated that many of the limitations were based on information provided by "former colleagues" and "discussions with others," not his own observations. (T. 678.)

To be sure, Dr. Davis's notations contain reports of Plaintiff's mental health symptoms due to his PTSD, depression, and anxiety. For example, notations indicated that Plaintiff suffered anxiety, flashbacks, nightmares, intrusive thoughts, avoidant behaviors, irritation, numbing, and a sense of hopelessness. (T. 681, 710, 715, 716, 725.) However, the substantial evidence standard means that "once an ALJ finds facts, we can reject those facts only if a reasonable factfinder would have to conclude otherwise." *Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 448 (2d Cir. 2012).

Here, the ALJ did not err in affording Dr. Davis's 2013 opinion less than controlling weight because his treatment notations provided only a summary of

treatment and did not include objective medical observations. *Greek,* 802 F.3d at 375 (a treating physician's opinion is not entitled to controlling weight when it is not supported by medically acceptable, clinical, and laboratory diagnostic techniques or is inconsistent with other evidence in the record).

The ALJ's mental RFC determination was made in accordance with the Regulations at 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2), and supported by substantial evidence in the record. The ALJ essentially limited Plaintiff to simple, routine, repetitive work with only occasional interaction with coworkers and the public. (T. 27.) These mental limitations were supported by Dr. Noia's medical source opinion as outlined herein. (T. 605-606.) The RFC determination was also supported by other objective mental health observations in the record. The ALJ properly afforded less than controlling weight to Dr. Davis's opinion because the opinion was not supported by other opinion evidence in the record, inconsistent with objective mental observations in the record, and not supported by Dr. Davis's treatment notations. Therefore, for the reasons stated herein, and further outlined in Defendant's brief, it is recommended that the ALJ's mental RFC determination be upheld.

## B.    Consultative Examiners

Plaintiff argues the ALJ committed legal error because she failed to follow the Regulations when she hired consultative examiners from an outside source without first seeking the consultative exam from Plaintiff's treating provider. (Dkt. No. 13 at 18-20 [Pl.'s Mem. of Law].)

During the course of an application for Social Security Disability benefits the Commissioner may purchase a consultative examination. 20 C.F.R. § 404.1519a. The purchase of a consultative exam is done at the discretion of the Commissioner. *Id.* at §

404.1519a(a) ("If we cannot get the information we need from your medical sources, we *may* decide to purchase a consultative examination.") (emphasis added).  Generally, an exam is ordered if information cannot be obtained from treating medical sources, to help the Commissioner resolve inconsistencies in the record, or to fill in any gaps in the record.  *Id.* at § 404.1519a(b)(1)-(4).  A consultative examination can only be performed by a "qualified medical source" who is licensed in the State and has "the training and experience to perform the type of examination or test [the Commissioner] will request." *Id.* at 404.1519g.

The Regulation at 20 C.F.R. § 404.1519h states:

[w]hen in our judgment [plaintiff's] treating source is qualified, equipped, and willing to perform the additional examination or tests for the fee schedule payment, and generally furnishes complete and timely reports, [plaintiff's] treating source will be the preferred source to do the purchased examination. Even if only a supplemental test is required, [plaintiff's] treating source is ordinarily the preferred source.

The Regulations state that a treating source will not be used in such cases where the treating source "prefers not to perform such examinations or does not have the equipment," there are conflicts or inconsistencies the treating source cannot resolve, plaintiff prefers to use a different source, or the treating source may not be a "productive source."  20 C.F.R. § 404.1519i.  The Regulations also state that "[t]he medical sources who perform consultative examinations will have a good understanding of [the Social Security Administration's] disability programs and their evidentiary requirements."  *Id.* at 404.1519n.

First, the ALJ has discretion to order a consultative examination to further develop the evidentiary record. *Cox v. Astrue*, 993 F. Supp. 2d 169, 177 (N.D.N.Y.

2012); *see Serianni v. Astrue,* No. 6:07-CV-250, 2010 WL 786305, *5 (N.D.N.Y. Mar. 1, 2010); 20 C.F.R. § 404.1519a.

Second, the ALJ has discretion in seeking a consultative examination from a plaintiff's treating source; "[w]hen *in our judgment* your treating source is qualified, equipped, and willing to perform the additional examination or tests for the fee schedule payment, and generally furnishes complete and timely reports, your treating source will be the preferred source to do the purchased examination." 20 C.F.R. § 404.1519a(a).

Therefore, an ALJ's failure to seek a consultative examination, or a consultative examiner from a treating source, does not constitute legal error because under the Regulations the ALJ is not obligated to order a consultative examiner, nor is she obligated to order a consultative examination from a treating source.

Here, ALJ did not abuse her discretion in not ordering a consultative examination from Plaintiff's treating provider, Dr. Davis, or other treating source. Plaintiff was represented by counsel and afforded the opportunity to provide all of his records from treating providers. Therefore, any error in seeking a consultative examiner from a treating provider would be harmless, because Plaintiff supplied a thorough medical record, complete with a functional capacity evaluation. *Fink v. Barnhart*, 123 F. App'x. 146, at 148 (6th Cir. 2005) (holding that the ALJ was not obligated to order consultative examination conducted by plaintiff's treating source and further any error would be harmless because plaintiff's medical record was complete).

The ALJ acted within her discretion in ordering a consultative exam, the ALJ did not fail to adhere to the Regulations in requesting an examination from a source that

was not a treating source; and further, any procedural error would be harmless.

Therefore, it is recommended that the Commissioner's decision be upheld.

**ACCORDINGLY**, based on the findings above, it is

**RECOMMENDED**, that the Commissioner's decision be **AFFIRMED**, and the Plaintiff's complaint **DISMISSED.**

Pursuant to 28 U.S.C. § 636 (b)(1) and Local Rule 72.1(c), the parties have **FOURTEEN (14) DAYS** within which to file written objections to the foregoing report. Any objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636 (b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated:      October 27, 2016

William B. Mitchell Carter
U.S. Magistrate Judge